# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

DANIEL C. LYDICK,

        Plaintiff,

v.                                        CIVIL ACTION NO.   2:18-cv-01020

ERIE INSURANCE PROPERTY &
    CASUALTY COMPANY,

        Defendant.


## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Erie Insurance Property & Casualty Company's ("Erie") Motion to Dismiss.  (ECF No. 6.)  For the reasons discussed below, the Court **GRANTS** the motion.

### I.  *BACKGROUND*

This action arises from an automobile accident on August 29, 2003.  (ECF No. 1-1 at 4 ¶ 5.)  At the time of the accident, which allegedly caused Plaintiff serious injuries, Plaintiff was insured by Erie with a policy that included underinsured motorists coverage limits of $20,000 per person and $40,000 per occurrence.  (*Id.* ¶¶ 6–8.)  Following the accident, Plaintiff presented an underinsured motorists claim to Erie, and Erie subsequently paid Plaintiff the alleged underinsured motorists coverage limit of $20,000.  (*Id.* at 4–5 ¶¶ 10, 13.)  Plaintiff now challenges the underinsured motorists coverage provided by Erie.  Plaintiff alleges that "Erie refused to use the forms prescribed by the West Virginia Insurance Commissioner, as required by the provisions of

W. Va. Code § 33–6–31d, and its offer(s) was/were otherwise defective and failed to meet the standards set for the [sic: forth]" by the West Virginia Supreme Court of Appeals. (*Id.* at 5 ¶ 16 (emphasis removed) (citing *Bias v. Nationwide Mut. Ins. Co.*, 365 S.E.2d 789 (W. Va. 1987)).)

Based on these alleged facts, Plaintiff contends that Erie's offer of uninsured and underinsured motorists coverage generates the following causes of action: (1) breach of contract, (2) common law bad faith, and (3) violations of the West Virginia Unfair Trade Practices Act ("UTPA"). (*Id.* at 13–18 ¶¶ 48–74.) Plaintiff seeks compensatory and punitive damages, attorneys' fees and costs, pre- and post-judgment interest, and any other relief justified. (*Id.* at 18–19 ¶ 75.)

Plaintiff originally filed the Complaint in the Circuit Court of Kanawha County, West Virginia, on March 13, 2018. (*Id.* at 3.) Erie removed the case to this Court on June 8, 2018, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332 as the sole basis for this Court's subject matter jurisdiction. (ECF No. 1.) Erie filed its Motion to Dismiss on July 3, 2018, arguing that all of Plaintiff's claims should be dismissed because they are barred by a previously executed release and the applicable statute of limitations. (ECF No. 6.) Plaintiff responded to Erie's motion on August 10, 2018,[1] (ECF No. 9), and Erie filed its reply on August 17, 2018, (ECF No. 11). As such, the Motion to Dismiss is fully briefed and ripe for adjudication.

---

[1] The Court previously granted a joint motion by the parties to extend the briefing deadlines associated with the pending motion. (*See* ECF No. 8.) In accordance with that order, the response and reply are timely and in compliance with Local Rule of Civil Procedure 7.1(a)(7).

    Further, the Court notes that Plaintiff's response to the motion does not adhere to the page limitation set forth in Local Rule of Civil Procedure 7.1(a)(2). Despite the fact that Plaintiff did not move for leave to file a brief in excess of twenty pages, the violation is not egregious, and the Court will consider Plaintiff's response in full.

## II. *LEGAL STANDARD*[2]

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

---

[2] While the pending motion is styled as a motion to dismiss and seeks relief in the form of dismissal of all of Plaintiff's claims, the legal standard section of Erie's motion focuses on Federal Rule of Civil Procedure 12(c). Rule 12(c) allows a party to move for judgment on the pleadings at this early stage of litigation. *See* Fed. R. Civ. P. 12(c). The Court notes that while a Rule 12(c) motion incorporates the Rule 12(b)(6) standard for review purposes, *see Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014); *Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012), the pending motion will be construed only as a Rule 12(b) motion to dismiss. This better aligns with the motion's styling, its requested relief, and the arguments contained therein.

## III.    DISCUSSION

The predicate task before the Court is to determine whether Plaintiff's claims against Erie can proceed in light of the release and applicable statute of limitations.    Erie argues that Plaintiff's claims are barred because they are based on actions arising from the 2003 motor vehicle accident and are encompassed within a release of claims executed in connection with the prior resolution of Plaintiff's underinsured motorists claim.    (*See* ECF No. 6 at 2.)    Erie further asserts that Plaintiff's common law bad faith and UTPA claims are barred by the statute of limitations.    (*Id.*) This Court agrees with Erie.

### A.    Plaintiff's Claims Are Barred By The Prior Release

In ruling on a motion to dismiss, a court is not limited to the factual allegations in the complaint but "may properly take judicial notice of matters of public record" without converting the motion into one for summary judgment.    *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); Fed. R. Evid. 201 (governing judicial notice).    A court is also free to consider documents attached to the motion to dismiss, "so long as they are integral to the complaint and authentic."    *Philips*, 572 F.3d at 180 (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).    Erie's motion calls upon the Court to take judicial notice of the underlying complaint and dismissal order and find the release and settlement communications integral to the allegations in the Complaint.    The Court will judicially notice the underlying complaint and dismissal order, finding they are public records.    Further, the Court will consider the release and settlement communications because the Complaint references the settlement of the underinsured motorists claim and there is no dispute as to their authenticity.    (*See* ECF No. 1-1 at 4–5 ¶¶ 10–13.)

Erie argues that Plaintiff, in connection with the prior resolution of his underinsured motorists claim, contractually released Erie from the instant claims. (ECF No. 6 at 11.) The release was executed in 2005 and includes a general release of any and all claims against Erie arising out of the 2003 motor vehicle accident.[3] (ECF No. 6-4 at 1.) In addition, the release expressly acknowledges a release of "all claims for damages which exist as of this date, but of which the undersigned do not know or suspect to exist, whether through ignorance, oversight, error, negligence or otherwise, and which if known would materially affect the undersigned's decision to enter into this settlement agreement." (*Id.*) After executing the release, Plaintiff voluntarily dismissed his claims against Erie with prejudice. (ECF. No. 6-5.)

Plaintiff responds that the release was fraudulently procured and must be void because the settlement was based on Erie's alleged misrepresentations of available coverage. (ECF No. 9 at 13–17.) Plaintiff's "factual misrepresentation" claim is based on the contention that Erie's offer of underinsured motorists coverage was commercially unreasonable. (*Id.*) In the Complaint, Plaintiff presupposes that because "Erie refused to use the forms prescribed by the West Virginia Insurance Commissioner" its offer was commercially unreasonable.[4] (ECF No. 1-1 at 5, 12 ¶¶ 16, 50.) Plaintiff's attempt to characterize Erie's failure to utilize the Insurance Commissioner's prescribed form as a "factual misrepresentation" falls short.

---

[3] Under the release, Plaintiff releases and discharges Erie from "any and all past, present or future claims, . . . of any nature whatsoever, whether based on tort, contract or other theory of recovery, which undersigned now has or which may hereafter accrue, arising out of a certain automobile accident which occurred on or about the 29th day of August, 2003, . . . as well as any and all other claims which were or may have been asserted directly or indirectly against Erie Insurance Company, in pending Circuit Court of Marshall County Civil Action number 03-C-242 M . . . ." (ECF No. 6-4 at 1.)

[4] The Complaint further alleges that Erie had a duty to utilize the Insurance Commissioner's provided form. (ECF No. 1-1 at 12 ¶ 42.)

Ordinary principles of contract construction govern the interpretation of the release. *West v. Liberty Mutual Insurance Co.*, 30 F.3d 132, 1994 WL 399140, at *3 (4th Cir. Aug. 3, 1994) ("[B]ecause releases are contracts, conventional rules of construction dictate that when the scope of the agreement is stated in clear and unambiguous language, the words utilized to express this breadth should be given their ordinary meaning . . . .") (citation omitted); *Sanson v. Brandywine Homes, Inc.*, 599 S.E.2d 730, 734 (W. Va. 2004); *Miller v. Liberty Mut. Ins. Co.*, 393 F.Supp.2d 399, 406 (S.D. W. Va. 2005).

In addition, the law favors and encourages compromise of disputes. *Messer v. Huntington Anesthesia Group, Inc.*, 664 S.E.2d 751, 758 (W. Va. 2008); *West*, 30 F.3d at *2 (noting "it is the policy of the law to uphold and enforce [settlement] contracts if they are fairly made and are not in contravention of some law or public policy.") (quoting Syl. Pt. 1, *Acord v. Chrysler Corp.*, 399 S.E.2d 860 (W. Va. 1990) (citation omitted)). Under West Virginia law, a settlement agreement will not be set aside absent clear and convincing proof of "accident, mistake or fraud in making the same." *Burdette v. Burdette Realty Improvement, Inc. et. al.*, 590 S.E.2d 641, 645 (W. Va. 2003); *see also Messer*, 664 S.E.2d at 758 (reinforcing the notion that resolved matters should not be revisited "except for grave cause.").

The proposition that Erie's offer was commercially unreasonable because it failed to use the Insurance Commissioner's form is faulty. Under West Virginia Code § 33–6–31(b), every automobile insurance agency must provide optional underinsured motor vehicle coverage to its insured under each policy. W. Va. Code § 33–6–31(b). An insurer is required to make a "commercially reasonable" offer of optional underinsured motorists coverage so that the insured can make a "knowing and informed" decision concerning its selection or rejection of that coverage.

6

*Bias v. Nationwide Mut. Ins. Co.*, 365 S.E.2d 789, 791 (W. Va. 1987) (holding a commercially reasonable offer must "provide the insured with adequate information to make an intelligent decision" by stating "in definite, intelligible, and specific terms, the nature of the coverage offered, the coverage limits, and the costs involved.") (citations omitted).   The insurer bears the burden of proving that an offer was commercially reasonable.   *Id.*; *Kalwar v. Liberty Mut. Ins.*, 506 S.E.2d 39, 43 (W. Va. 1998).   If the "insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured" the optional coverage "is included in the policy by operation of law."   *Thomas v. McDermitt*, 751 S.E.2d 264, 269 (W. Va. 2013) (quoting *Bias*, 365 S.E.2d at 791).

The West Virginia Legislature enacted West Virginia Code § 33–6–31d, which required the Insurance Commissioner to issue a form containing the information required under *Bias*.   W. Va. Code § 33–6–31d(a) (1993).   As the West Virginia Supreme Court of Appeals clarified in *Thomas*, an insurer is not required to use exact replicas of the Insurance Commissioner's form pursuant to West Virginia Code § 33–6–31d.   Rather, an insurer's failure to use the prescribed form simply "results in the loss of a statutory presumption" that the insurer made a commercially reasonable offer of coverage.   *Id.* at 267 (shifting the burden of proof to the insurer to establish the *Bias* common law standard when the insurer fails to utilize the form promulgated by the Insurance Commissioner).   A noncompliant form that contains the required information may still be deemed sufficient as a knowing and informed waiver.   *See Martin v. State Farm Mutual Automobile Ins. Co., et al.*, 809 F.Supp.2d 496 (S.D. W. Va. 2011) (holding that the insurer had made a commercially reasonable offer of underinsured motorists coverage and that the insured had made a knowing and intelligent rejection of coverage even though the insurer did not use the

specific form required by the Insurance Commissioner.).   Therefore, Erie can show that its offer

was commercially reasonable even in light of its differing form.

Here, the Complaint does not allege facts to support a claim that Erie misrepresented the

available coverage to Plaintiff.   Indeed, the Complaint simply pleads legal theories consistent

with Plaintiff's contention that Erie's offer was not commercially reasonable.   *See Iqbal*, 556 U.S.

at 677 (stating the court is "not bound to accept as true a legal conclusion couched as a factual

allegation") (citation omitted); *Ibrahim v. Plateau Med. Ctr.*, 2006 WL 456086, *1 (S.D. W. Va.

Feb. 23, 2006).   The Court, therefore, will not accept Plaintiff's conclusory, legal allegation.

Even if the Court were to accept Plaintiff's allegation that Erie failed to make an effective

offer, the Complaint does not set forth facts that warrant rescinding the release.   Contrary to

Plaintiff's assertion, Erie was under no duty to inform Plaintiff that it had not used the exact form

issued by the Insurance Commissioner.[5]   Plaintiff was represented by counsel who brought his

original claims and negotiated his settlement with Erie.[6]   (*see generally* ECF Nos. 6-1, 2, 3, 4, 5.)

His counsel received copies of the specific form at issue prior to the 2005 settlement, (*see* ECF

No. 6-2), and was charged with the knowledge of the law with regard to the form that Plaintiff

now asserts, under the advice of new counsel, was deficient.   *Superior Pocahontas Coal Co., Inc.*

*v. Island Creek Coal Co.*, 657 F.Supp. 796, 798 (S.D. W. Va. 1987) (noting that citizens are

"charged with knowledge of the law.") (citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380

(1947)).   Plaintiff possessed all necessary and critical information to evaluate the differing forms

---

[5]  Plaintiff implies without citing legal authority that Erie was obligated to inform Plaintiff that its form deviated from the Insurance Commissioner's provided form.   (ECF No. 1-1 at 10 ¶ 32.)
[6]  A noteworthy provision of the release provides that Plaintiff was "represented by counsel, and [he] discussed the terms of this Release with said counsel and fully understand[s] the terms of the Release . . . ."   (ECF No. 6-4 at 2.)

and challenge the coverage limits at the time the release was signed.    Therefore, the Court cannot

reasonably infer that the release was procured upon misrepresentations as to available coverage.

The release executed by Plaintiff clearly and unambiguously releases Erie from "any and

all past, present or future claims . . . of any nature whatsoever, whether based on tort, contract or

other theory of recovery" arising out of the 2003 motor vehicle accident.    (ECF No. 1-4.)    *See*

*West*, 30 F.3d at \*2–3 (holding that a general release discharging a party from "any and all claims"

bars a subsequent bad faith claim against the settling party.).    Plaintiff does not dispute that he

intended to enter into a general release of all claims against Erie.    *See Va. Impression Prod. Co.*

*v. SCM Corp.*, 448 F.2d 262, 265 (4th Cir.1971) ("[T]he very nature of a general release is that

parties desire to settle all matters forever."); *see also West*, 30 F.3d at \*2 (the court "will assume

parties were fully aware of the terms and scope of their agreement when they have negotiated the

release with the assistance of counsel and agreed to the language.") (citation omitted).

Accordingly, the Court finds that the release bars Plaintiff's claims and hereby grants Erie's motion

to dismiss Counts I, II, and III of the Complaint.[7]

B.    *Plaintiff's Claims Are Barred By The Statute Of Limitations*

In deciding a motion to dismiss based on the statute of limitations, the Court should only

grant the motion if it clearly appears on the face of the complaint that the plaintiff's claims are

time-barred.    *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Dean v. Pilgrim's*

*Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).    The law favors statutes of limitation and

construes them liberally.    *See Johnson v. Nedeff*, 452 S.E.2d 63, 66 (W. Va. 1994) (quotations

---

[7] In this Court's view, if the claims in this case were contractually released, then they would be barred regardless of
whether the elements of *res judicata* are satisfied.    Therefore, because the Court finds that the parties are bound by
the release, the Court declines to address Erie's skeletal yet unchallenged argument of *res judicata* at this time.

omitted). Courts analyzing a West Virginia statute of limitations should conduct a five-step analysis in determining whether a cause of action is barred by the statute of limitations. *See Robinson v. Quicken Loans Inc.*, 988 F.Supp.2d 615, 625 (S.D. W. Va. 2013) (citing *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009)). The Court initially must "identify the applicable statute of limitation for each cause of action." *Dunn*, 689 S.E.2d at 265. Second, the Court "should identify when the requisite elements of the cause of action occurred." *Id.* Further, the Court must decide if the discovery rule should apply, which tolls the statute of limitations "until a claimant knows or by reasonable diligence should know of his claim." Syl. Pt. 2, *Gaither v. City Hosp., Inc.*, 487 S.E.2d 901, 906 (W. Va. 1997). Fourth, if the plaintiff does not benefit from the discovery rule, then the Court must look at "whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action." *Dunn*, 689 S.E.2d at 265. Lastly, the Court must inquire whether "some other tolling doctrine" affects the statute of limitations period. *Id.* The *Dunn* Court emphasized that "only the first step is a question of law for resolution by the trial court." *See id.*

The parties here do not dispute that Plaintiff's claims for common law bad faith and violations of the UTPA are governed by a one-year statute of limitations. *See Wilt v. State Automobile Mutual Ins. Co.*, 506 S.E.2d 608, 614 (W. Va. 1998); *Noland v. Virginia Insurance Reciprocal*, 686 S.E.2d 23 (W. Va. 2009). The parties' contentions are with the second, third, and fourth steps of the analysis: when Plaintiff's claims accrued, whether the discovery rule applies, and whether Erie fraudulently concealed facts that prevented Plaintiff from discovering his claims. (*See* ECF No. 6 at 14–17; ECF No. 9 at 18–22.)

10

Erie argues that any claims of bad faith or alleged violations of the UTPA in connection with Plaintiff's underinsured motorists claim accrued no later than when that claim was resolved and dismissed in 2005.   (ECF No. 6 at 14.)   Plaintiff responds that only after the West Virginia Supreme Court of Appeals denied class certification of these claims in another matter did he become aware of these potential claims.   Specifically, Plaintiff argues that because Erie allegedly opposed efforts to identify potential class members in a separate matter[8] and did not inform him that its form deviated from that of the Insurance Commissioner, he was prevented from discovering his potential claims.   (ECF No. 1-1 at 10–11 ¶¶ 32–35.)

The general rule is that "the statute of limitations . . . begins to run when the right to bring an action . . . accrues."   *Roberts v. W. Va. Am. Water Co.*, 655 S.E.2d 119, 124 (W. Va. 2007) (citation omitted).   However, "under the discovery rule, the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim."   Syl. Pt. 2, *Stuyvesant v. Preston Cty. Comm'n*, 678 S.E.2d 872, 876 (W. Va. 2009) (citation omitted); *see also Beattie v. Skyline Corp.*, 906 F.Supp.2d 528, 540 (S.D. W. Va. 2012) ("While the statute of limitations generally begins to run when the injury occurs, under the discovery rule, the statute of limitations is tolled until the individual discovers or could have discovered the alleged defect with reasonable diligence.") (citing *Univ. of W. Va. Bd. of Trs. V. Van Voorhies*, 84 F.Supp.2d 759, 768 (N.D. W. Va. 2000)).   "[W]hether a plaintiff 'knows of' or 'discovered' a cause of action is an objective test."   *Dunn*, 689 S.E.2d at 265 (citation omitted).   "The plaintiff is charged with knowledge of the factual, rather than the legal, basis for the action."   *Id.*   "This objective test focuses upon

---

[8] The Complaint refers to *Hardman v. Erie Insurance Property & Casualty Company et. al*, Civil Action No. 08-C-153, filed in the Circuit Court of Jackson County, West Virginia ("*Hardman*").   (ECF No. 1-1 at 5 ¶ 17.)

whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action." *Id.*

Essentially, Plaintiff proposes that the statute of limitations was tolled because he was unaware of West Virginia law concerning the selection or rejection of coverage. This argument has no merit. First, as the Court discusses above, Erie had no obligation to advise Plaintiff that its form deviated from the Insurance Commissioner's issued form. Second, the attempted class action in a separate matter has no bearing on when Plaintiff should have known of his potential claims against Erie. The West Virginia Supreme Court of Appeals established the law concerning the selection or rejection of underinsured motorists coverage prior to Plaintiff's 2003 motor vehicle accident. *See generally Bias*, 365 S.E.2d 789 (1987) (requiring an insurer to make a commercially reasonable offer of coverage by which an insured can make a "knowing and informed" decision as to the selection or rejection of coverage). The Court acknowledges that by way of enactment of West Virginia Code § 33–6–31d the law has evolved to ensure compliance with an insurer's duty under West Virginia Code § 33–6–31. Nonetheless, the *Bias* standard has remained unchanged since the West Virginia Supreme Court's ruling, which predates Plaintiff's 2003 accident and subsequent resolution of his underinsured motorists claim. Plaintiff's "[m]ere ignorance of the existence" of these potential claims "does not prevent the running of the statute of limitations." *Merrill v. W. Va. Dep't of Health & Human Res.*, 632 S.E.2d 307, 318 (W. Va. 2006) ("the 'discovery rule' applies only when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury.") (citation omitted).

Moreover, whether Plaintiff's identity would have been revealed through discovery efforts in a subsequent and separate litigation is irrelevant to tolling the statute of limitations. Not until 2010—well after the expiration of the statute of limitations here—was the Second Amended Complaint filed in *Hardman* to assert a class action of these claims. (ECF No. 1-1 at 6 ¶¶ 18–20.) No alleged discovery dispute concerning the identity of potential class members in this separate matter prevented Plaintiff from pursuing an individual underinsured motorists claim. *See id.* at 318 n.22 (holding *in dicta* that delay in responding to timely discovery requests "does not, in and of itself, constitute fraudulent concealment."). Accordingly, the Court finds that the discovery rule does not apply, and Plaintiff's common law and statutory bad faith claims are time-barred by the statute of limitations.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Erie's Motion to Dismiss. (ECF No. 6.) Further, the Court **DISMISSES** this case, and **DIRECTS** the Clerk to remove this action from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     January 14, 2019

THOMAS E. JOHNSTON, CHIEF JUDGE